UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEAN-JOSEPH CINECOE,<br><br>Plaintiffs,<br><br>v.<br><br>THE BOEING COMPANY, THE BIS SAVINGS PLAN, and THE EMPLOYEE BENEFIT COMMITTEE,<br><br>Defendants. | No. 16 CV 8443<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Jean-Joseph Cinecoe, brings this action against defendants, the Boeing Company, the BIS Savings Plan, and the Boeing Employee Benefit Committee, under the Employee Retirement Income Security Act of 1974 and the Illinois Wage Payment and Collection Act. Defendants move to dismiss the complaint. For the following reasons, the motion is granted.

**I.   Legal Standards**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but need not accept legal conclusions or conclusory allegations. *Id.* at 678–79. It is uncommon for district courts to dismiss a complaint at the pleading stage as untimely because a complaint is not required to anticipate or to overcome affirmative defenses, such as the statute of limitations. *See Cancer Found., Inc. v.*

*Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). Nevertheless, "if a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground." *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015).

## II. Background

Cinecoe was an employee of one of Boeing's subsidiaries from 1990 until 1998. [16-1] ¶¶ 6, 12.[1] During that time, Cinecoe's employer deducted wages from his paycheck and deposited them into a retirement savings plan, the BIS Savings Plan.[2] *Id.* ¶¶ 9, 13. Cinecoe believes that the deductions totaled $34,380.73. *Id.* ¶ 14. In approximately July 1999, Boeing sold its subsidiary to Science Applications International Corporation. *Id.* ¶ 15. Pursuant to the sale, Boeing also transferred plan sponsorship to SAIC. *Id.* ¶ 16. After the transfer, Boeing never sent Cinecoe, and Cinecoe never received, balance statements for his account or notice of the sale or transfer.[3] *Id.* ¶¶ 17–18.

In 2014, Cinecoe made a claim for benefits with Boeing. *Id.* ¶ 21. On November 20, 2014, Boeing explained that if Cinecoe had been a participant in the plan, his account would have been transferred to SAIC at the time of the sale; but,

---

[1] Bracketed numbers refer to entries on the district court docket.

[2] The BIS Savings Plan was an "employee benefit plan," *see* 29 U.S.C. § 1002(3), and an "employee pension benefit plan," *see id.* § 1002(2)(A). Cinecoe's employer was the "plan sponsor." *See id.* § 1002(16)(B). The Boeing Employee Benefit Committee was the plan administrator and therefore, a "fiduciary" of the plan. [16-1] ¶ 11 (citing 29 U.S.C. § 1002(21)(A)).

[3] The complaint does not say whether or not Cinecoe received balance statements for his account before the sale of his former employer and the transfer of the plan. Defendants note that Boeing reported the sale of its subsidiary in its Annual Report, which is publically available. [21] at 7 n.2.

2

Boeing informed Cinecoe that there was no record of an account under his name. *Id.* ¶ 22. Yet, records from the Social Security Administration show payroll deductions, labeled as "deferred comp 401(k)," on Cinecoe's paychecks each year from 1992 to 1998.[4] *Id.* ¶ 26. On September 3, 2015, Cinecoe sent the SSA records to Boeing. *Id.* ¶ 30. Several weeks later, Boeing confirmed for Cinecoe that there were no records of his account. *Id.* ¶ 31.

Cinecoe appealed, and on March 3, 2016, the Boeing Employee Benefit Committee upheld the benefit denial. *Id.* ¶¶ 32–33. It stated that if Cinecoe's account exceeded $3,500 at the time of his termination, he could have elected to receive the vested balance of his account, or to defer receiving a distribution from his account. *Id.* ¶ 33. The Committee, however, had no record of Cinecoe electing to receive his benefit. *Id.* ¶ 34. With respect to the SSA records, the Committee reasoned that evidence of the deferred compensation did not "equate to an unclaimed benefit." *Id.* ¶ 35. Consequently, the Committee concluded that there was no deferred compensation benefit or attributable interest payable to Cinecoe. *Id.* ¶ 36. The Committee recommended that Cinecoe contact SAIC, which assumed sponsorship of and responsibility for the plan in June 1999. *Id.* ¶ 37. Cinecoe reached out to SAIC only to learn that it did not have any records of an account under Cinecoe's name. *Id.* ¶ 38.

---

[4] Cinecoe alleges that Boeing reported the payroll deductions to the SSA and to the Internal Revenue Service. *Id.* ¶ 27.

### III. Analysis

#### A. ERISA

Cinecoe brings his federal claims under § 1132(a)(3), which allows a plan participant or beneficiary to bring an action to enjoin any act or practice that violates an ERISA provision or terms of the plan, or to obtain equitable relief that will redress ERISA violations, or to enforce ERISA provisions or terms of the plan. 29 U.S.C. § 1132(a)(3). Counts I and II of the amended complaint allege that defendants breached their fiduciary duty, thereby violating § 1104(a) by: (1) failing to notify him that Boeing sold his former employer to SAIC and transferred plan sponsorship to SAIC; (2) failing to follow a prudent procedure for transferring his account and for maintaining records of that transfer; (3) failing to ensure that his account information from the plan was accurate and properly transferred; and (4) failing to ensure that the funds were in fact deposited into his account. 29 U.S.C. § 1104(a).

Defendants move to dismiss Cinecoe's federal claims as untimely. Actions for breach of fiduciary duty under ERISA must be brought within the earlier of: (1) three years after the earliest date on which the plaintiff had actual knowledge of the breach, or (2) six years after the latest date on which an action that constituted a part of the breach occurred, or in the case of an omission, the latest date on which the fiduciary could have cured the breach. 29 U.S.C. § 1113; *see also Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 678 (7th Cir. 2014). The statute provides an exception for cases of fraud or concealment; such actions must be brought no later

than six years after the date on which the plaintiff discovers the alleged breach.[5] 29 U.S.C. § 1113; *see also Wolin v. Smith Barney Inc.*, 83 F.3d 847, 850 (7th Cir. 1996) *disapproved of on other grounds by Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) ("If there is fraudulent concealment the plaintiff gets a generous six years from the date of discovery of the violation in which to sue, but no more, even if the defendant somehow succeeds in preventing him from suing within that period."). Cinecoe argues that this exception applies and that he did not discover that he would not receive a benefit payout from his plan until November 2014. Since he commenced this action less than two years after that discovery, he argues that his complaint is timely. *See* [1].

In order for the fraudulent concealment exception to apply, however, a plaintiff must establish that defendants engaged in fraudulent concealment. *Laskin v. Siegel*, 728 F.3d 731, 735 (7th Cir. 2013). "An ERISA fiduciary commits fraud or concealment by delaying a wronged beneficiary's discovery of his claim either by misrepresenting the significance of facts the beneficiary is aware of (fraud) or by hiding facts so that the beneficiary does not becomes [*sic*] aware of them (concealment)." *Id.* (citing *Radiology*, 919 F.2d at 1220). To meet the burden for fraudulent concealment, a plaintiff must show that the ERISA violation involved

---

[5] The phrase "fraud or concealment" incorporates the fraudulent concealment doctrine. *Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir. 1990) (citing *Schaefer v. Arkansas Medical Soc.*, 853 F.2d 1487, 1491 (8th Cir. 1988)). That doctrine requires that a plaintiff show that defendants were engaged in a course of conduct that was designed to conceal evidence of their alleged wrongdoing; and that plaintiff was not on actual or constructive notice of that evidence, despite plaintiff's exercise of due diligence. *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1093 (7th Cir. 1992) (citing *Schaefer*, 853 F.2d at 1491–92).

5

some "trick or contrivance intended to exclude suspicion and prevent injury." *Id.* (quoting *Martin*, 966 F.2d at 1095).

Cinecoe argues that defendants took affirmative steps to conceal the fraud from him because his paystubs indicated that deductions were made for contributions to his plan and because defendants reported the contributions to the federal government, when in fact, defendants had not established an account for Cinecoe in the plan. This theory, however, only comes to light in Cinecoe's opposition brief. His amended complaint does not give any indication that he is accusing defendants of fraudulent concealment; he does not allege that defendants knew that Cinecoe did not have an account, that defendants intentionally did not notify Cinecoe of the sale and transfer, or that defendants purposely hid anything from Cinecoe.

In an attempt to make his pleadings align with the arguments in his opposition brief, Cinecoe filed a motion for leave to file a second amended complaint.[6] *See* [40]. The proposed second amended complaint includes an additional count, which alleges that defendants breached their fiduciary duty by failing to establish an account for Cinecoe in the plan. *See* [40-2] at 19. Beyond that

---

[6] Cinecoe moved for leave to file a second amended complaint because after he had filed his amended complaint (the subject of defendants' motion to dismiss), he received information that suggests that the service providers may not have received his information when the plan was transferred to SAIC; he says this raises "an inference that the money deducted from his paychecks was never put into the BIS Plan." [40] at 2; *see also* [40-1] (email from staff attorney at Leidos informing Cinecoe that Vanguard has no record of Cinecoe in its system, "but that it is always possible it had a record at time of transfer in 1999"; the staff attorney suggests: "if any entity were to have more detailed information it would be John Hancock, but even then I would guess a record retention policy would have allowed for purging of such old files by this point.").

addition, though, the differences between the amended complaint and the proposed second amended complaint are insignificant. Both complaints frame the facts as a mistake by defendants—a failure to establish an account for Cinecoe or to keep organized records of employees' retirement savings accounts. Neither mentions the words fraud or concealment, any combination thereof, nor any relevant synonym. It is not reasonable to infer fraudulent concealment from the facts pled in the complaint (or the proposed amended complaint), particularly in light of Rule 9(b)'s requirement that fraud be pled with particularity. At most, what can be inferred is that defendants erred, but not with any intent to defraud Cinecoe or conceal their error from him.

Absent allegations that describe Cinecoe's claim as one *of* "fraud or concealment," the fraudulent concealment exception is not triggered. *See Laskin*, 728 F.3d at 735 (plaintiff did not meet burden of proof because plaintiff did not offer evidence of fraud or concealment, but instead asked the court "to infer that [defendant] engaged in concealment based upon the sole fact that she claims that she never received any updates on her plan"). Since Cinecoe's complaint merely alleges breaches of fiduciary duty, the earlier of § 1113's three- and six- year bars operates here. Regarding the three- and six-year bars, Cinecoe says that he learned of the alleged breach in this case in November 2014, when defendants informed him that he would not be receiving a payout under his plan. Three years after that date would be November 2017. For the last act in this case, Cinecoe identifies March 3, 2016, when the Committee upheld the denial of his benefits. Six years after that

7

date would be March 2022. He asserts that defendants' failure to remit deducted wages from his paychecks into his savings plan on a timely basis under 29 C.F.R. § 2510.3-102(b) constitutes an omission and that that omission is a continuing violation that persists to this day. It is Cinecoe's position, therefore, that this action is timely.

That a breach has not been cured does not make the violation a continuing one. Regardless of whether Cinecoe began to feel the effects of his ineligibility for ERISA benefits long after defendants either failed to establish his account or failed to ensure that his account was properly transferred to SAIC, his allegations describe wrongful conduct that occurred on or before the date Boeing transferred sponsorship of the plan to SAIC. After the transfer, Cinecoe only alleges that defendants never cured the alleged breach. Those allegations describe one violation, not a series of continuing violations. *See Berger v. AXA Network LLC*, 459 F.3d 804, 816 n.16 (7th Cir. 2006); *see also Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008) (explaining that the continuing violation doctrine is misnamed; in practice, it is about a cumulative violation, not a continuing violation).

Although Cinecoe characterizes the violation as one of defendants continuously failing to notify him of the absence of his account, or of his misplaced funds, or of the plan's transfer to SAIC, the more apt characterization is that of a single breach that was not cured. Given that it is always possible to cure a breach, a rule that ties a fiduciary's liability to the successful cure of the breach would have

the practical effect of extending the fiduciary's liability indefinitely. There is no support for such a rule here. *See Librizzi v. Children's Mem'l Med. Ctr.*, 134 F.3d 1302, 1307 (7th Cir. 1998) (rejecting a related argument that a plaintiff's actual knowledge of the violation did not occur until the defendant ultimately failed to cure the violation, noting that "'cure' in the sense of 'fix' must be distinguished from 'provide a remedy' in the sense of 'damages for what can no longer be fixed,' lest § 1113(1)(B) mean that the time never runs out."). The breaches Cinecoe alleges are not continuing, they occurred sometime in the past.

As defendants point out, if their failure to establish Cinecoe's account was an omission, then their last opportunity to cure that breach was in 1999, before it transferred sponsorship of and responsibility over the plan to SAIC. On the other hand, if defendants established Cinecoe's account, but failed to ensure that the account was transferred properly, then the alleged breach occurred in 1999 with the transfer. If the plan's transfer in June 1999 was a material modification, then under the regulations, the defendants would have had to notify Cinecoe by July 2000, which is 210 days after the close of the plan year in which the modification was adopted. *See* 29 C.F.R. § 2520.104b-3(a). The alleged breach in that scenario would have been in July 2000. Finally, if the transfer triggered the start of a blackout period, then under the statute, they would have had to notify Cinecoe of the transfer by June 1999, which is thirty days before the commencement of the alleged blackout period, which took place in July 1999. *See* 29 U.S.C. § 1021(i). The alleged breach in

9

that scenario would have been June 1999. Under any of those scenarios, though, defendants' alleged breach took place over fifteen years ago.

Applying the factual allegations in the complaint to § 1113, I conclude that the earliest date on which Cinecoe had actual knowledge of any breach was November 2014, and that the last act or omission in this case occurred more than fifteen years ago. Six years from the date of the last act or omission (approximately 2005 or 2006) would be earlier than three years after Cinecoe had knowledge of the breach (approximately 2017), and no action may be commenced after the earlier date. The limitations period expired over ten years ago. Cinecoe's federal claims are time-barred and are dismissed with prejudice.

### B. IWPCA

Cinecoe brings his state-law claim under IWPCA § 115/8, which provides that the amount an employer contributes to an employee benefit fund, pursuant to a legal commitment, shall be treated as wages and consequently, shall be subject to the wage payment provisions of the IWPCA. 820 ILCS 115/8. Defendant moves to dismiss that claim as preempted by ERISA and as untimely under the IWPCA's statute of limitations, *see* 735 ILCS 5/13-206 ("actions brought under the [IWPCA] shall be commenced within 10 years next after the cause of action accrued"). Cinecoe agrees that if this matter is covered by ERISA, then his state-law claims are preempted. [36] at 11. He does not agree, however, that his state-law claim is untimely because, he contends that the discovery rule would toll his claim, such that he would have ten years from November 2014 to bring his action under the IWPCA.

ERISA has one of the broadest preemption clauses of any federal statute; it completely occupies the field of employees' health and welfare benefits. *Studer v. Katherine Shaw Bethea Hosp.*, No. 16-3728, 2017 WL 3431649, at *1 (7th Cir. Aug. 10, 2017) (citing *Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1035 (7th Cir. 2014). The Supreme Court articulated a two-part test to decide if ERISA preempts a state statute: (1) "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and (2) "where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (citing 29 U.S.C. § 1132(a)(1)(B)).

Cinecoe labeled his claim as a violation of § 1132(a)(3) (to obtain equitable relief to redress a violation or enforce the provisions of his plan), *see* [36] at 5, but he could have brought his claim under § 1132(a)(1)(B) (to recover benefits due to him); because, the crux of his complaint is that deductions were made from his paychecks from 1990 to 1998 for the purposes of contributions to his employee benefit plan, but that he cannot collect those funds because defendants have no record of his account and no information as to where the funds are now. Indeed, Cinecoe identifies the plan as an "employee benefit plan" and an "employee pension benefit plan" under ERISA. *See* 29 U.S.C. § 1002(2)(A), § 1002(3). His complaint falls within the scope of § 1132(a)(1)(B), which allows a participant or beneficiary to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or

11

to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Cinecoe brings this suit only to rectify a denial of benefits promised under ERISA-regulated plans, which he deems wrongful; he does not attempt to remedy a violation of another independent legal duty. As such, his IWPCA claim is preempted, and it is dismissed with prejudice.

## IV. Conclusion

Defendants' motion to dismiss, [20], is granted. Plaintiff has amended the complaint once in response to a motion to dismiss and his proposal for a second amended complaint, *see* [40-2], contains the same flaws as his amended complaint. As a result, there is no reason to believe that another amended complaint would cure those defects. The motion for leave to file a second amended complaint, [40], is denied. The complaint is dismissed with prejudice. Enter judgment and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: September 5, 2017